UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    CELESTE A. KARAKAS                          CASE NO. 06-32961
                                                          (formerly 05-62329)
                             Debtor                 Chapter 13

--------------------------------------------------------
CELESTE A. KARAKAS

                            Plaintiff

                  vs.                                          ADV. PRO. NO. 06-80245

BANK OF NEW YORK

                            Defendant
--------------------------------------------------------
APPEARANCE:

HARRIS LAW OFFICE PLLC                        LAURA M. HARRIS, ESQ.
Attorneys for Plaintiff                                 Of Counsel
4199 East Genesee St.
Syracuse, NY 13214

McCABE, WEISBERG & CONWAY, PC         MONICA G. CHRISTIE, ESQ.
Attorneys for Defendant                          Of Counsel
52 West 36th Street                                    PATRICK G. RADEL, ESQ.
Syracuse, New York 13214                     Local Counsel


Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge


**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**


       Before the Court is an adversary proceeding commenced by the filing of a complaint on

August 10, 2006 by Celeste A. Karakas ("Debtor") against the Bank of New York (the "Bank"),

seeking to reclassify the claim of the Bank as unsecured pursuant to § 506(a) and § 1322(b) of

the Bankruptcy Code (11 U.S.C. §§101-1330) ("Code"). The Debtor filed an amended complaint on August 16, 2006. Issue was joined on September 5, 2006, by service of an answer on behalf of the Bank.

A trial was held at Utica, New York, on January 11, 2007. Following the trial, the Court reserved its decision and in lieu of closing arguments allowed the parties to submit memoranda of law on or before February 9, 2007.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§1334(b), 157(a), (b)(1) and (b)(2)(K) and (O).

## FACTS

The Debtor filed a voluntary petition ("Petition") seeking relief pursuant to Chapter 13 of the Code on April 1, 2005. Debtor listed her residence at 1517 Lamson Road, Phoenix, New York (the "Residence"), as having a value of $52,000. *See* Schedule A, attached to her Petition (Debtor's Exhibit 13). She listed a first mortgage held by Household Finance Realty Corporation of New York ("Household") with a balance of $62,000 and a second mortgage held by the Bank with a balance of $15,600. *See* Schedule D, attached to her Petition.

The Debtor's plan ("Plan") was confirmed by this Court on July 8, 2005. It provided that

> [t]he following liens shall be avoided pursuant to 11 U.S.C. § 506 or 522(f), or

> other applicable sections of the Bankruptcy Code: Bank of New York . . . There is no equity in the debtor's home so [sic] support the 2d mortgage with Bank of New York and its claim will be treated as unsecured. The debtor will bring an adversary proceeding to avoid Bank of New York's 2d mortgage lien.

Plan at ¶¶ 1 and 5 of "Other Provisions." The Plan also provides for a dividend to unsecured creditors of not less than 5%.

On April 26, 2005, Household filed a proof of claim in the amount of $63,214.54, based on a Mortgage and Loan Repayment and Security Agreement, dated October 16, 2000. *See* Debtor's Exhibit 11. On July 13, 2005, the Bank filed its proof of claim in the amount of $16,394.13, based on a Mortgage and Homeowner's Edge Credit Line Agreement, dated September 12, 2003. *See* Bank's Exhibit B.[1] Both creditors assert that their respective claims are secured by the Residence.

According to Schedule I of the Debtor's Petition, at the time of filing the Debtor had been employed as a "Real Property Appraiser" for the Town of Camillus, New York, with the Office of the Assessor, for seven months. *See* Debtor's Exhibit 13. At trial she testified that she was working for the Town of Camillus as a real property appraisal aide. Tr. at 37. She acknowledged that she is not a licensed appraiser. *Id.* at 34. She testified that she had taken various courses in 1993, 1994 and 1998 in the hopes of becoming licensed as an appraiser. *See* Debtor's Exhibits 9 and 10. She also indicated that she had taken all of the courses necessary to become an assessor. *Id.* at 37 and Debtor's Exhibit 8. The Debtor testified that she had worked as a data collector for the Town of Lysander, New York in the assessor's office for twelve years, as well as for the Town of Salina, the Town of Pompey and the Town of Onondaga, all located in New

---

[1] The parties stipulated to the amount of Household's claim, as well as the Bank's, as set forth in their respective proofs of claim. Transcript ("Tr.") at 3.

4

York State. *Id.* at 37-38. According to the Debtor, she does hold a real estate sales license.[2] *Id.* at 29-30 and Debtor's Exhibit 4.

It was the Debtor's testimony that the Residence was built in 1850. Tr. at 28. She acknowledged that it contained approximately 1,866 square feet and had what are considered to be five bedrooms and one and a half baths. *Id.* at 66. The Debtor testified that the value of the Residence of $52,000, as listed in her schedules at the time of filing her Petition, was based on an appraisal.[3] On cross-examination she acknowledged that any estimate of value as of April 2005 would only be a guess on her part. *Id.* at 76. On redirect she opined that the Residence had a value of $52,000 when she filed her Petition. *Id.* at 92. However, on recross she testified that that value was based on the appraisal, and that she had not "worked up any kind of personal figures to figure out what my property was worth." *Id.* at 93. According to the Debtor, it was her opinion, as a lay witness, that the value of the Premises as of the date of the trial was between $62,000 and $63,000, based on her review of several multiple listings (*see* Debtor's Exhibit 6-A through 6E)[4] and her personal familiarity with the property.

With respect to the condition of the Residence, the Debtor had taken photographs of both

---

[2] The Court declined to qualify the Debtor as an expert witness. However, it did allow her to give opinion testimony as a lay witness pursuant to Federal Rule of Evidence 701 concerning the value of the Residence on a very limited basis. Tr. at 39-40; 46-47.

[3] Without the testimony of the appraiser, the Court sustained the Bank's objection to the admission of the appraisal referenced by the Debtor on direct examination. However, the Court did allow the admission of certain photographs taken by the Debtor in February 2005 that were attached to the appraisal, exclusive of any descriptive comments in the margins. *See* Debtor's Exhibit 1.

[4] The Debtor testified that the comparables she examined were those considered by the Bank's appraiser. Tr. at 45-46.

5

the inside and outside of the house in February 2005 (Debtor's Exhibit 1), and also the week prior to this trial (Debtor's Exhibit 3). She testified that the stairs leading to the second floor needed repair. Tr. at 26. It was also her testimony that the two second floor rooms, which were categorized as bedrooms by the Bank's appraiser,[5] were not insulated. *Id.* According to the Debtor, her children slept in the two rooms in the summer months. *Id*. She also testified that one of the downstairs bedrooms had ice damage to the roof and the ceiling was torn out.[6] It was the Debtor's view that only two of the five bedrooms could actually be occupied year round. Tr. at 28.

Donald Long ("Long"), assessor for the Town of Lysander over the past ten years, testified on the Debtor's behalf.[7] He testified that the assessed value of the Premises, as of the valuation date of July 2005, for the 2006 tax year was $58,300 based on a drive-by of the property in the fall of 2005. Tr. at 115-17. He indicated that between July 2004 and July 2005 there had been an overall increase in real property values of 6% for the Town of Lysander where the Residence is located. He acknowledged that in the rural areas it had been between 2-3%. Tr. at 102. He testified that between July 2005 and July 2006 there had been an overall trend for both assessments and selling prices to have increased 5% in the Town of Lysander. Tr. at 103.

---

[5] The Bank's appraiser testified that the Residence had five bedrooms although he acknowledge that two of the rooms could have been used as a den or an office. Tr. at 147.

[6] On cross-examination the Debtor testified that the ice damage had occurred in 2004 and that she had received insurance proceeds to make repairs to the damage. *Id.* at 15 and 64. However, she had elected to spend the monies for other necessities. *Id.* at 15-16 and 65.

[7] The Court declined to qualify him as an expert in the field of real estate appraisal. Tr. at 104 and 107. The Court indicated that as an assessor he could, however, testify as a lay witness. *Id.* at 104.

On cross-examination, Long would not agree that the assessed value of real property was different from the fair market value. *Id.* at 118. However, when asked to examine the comparable sales used by the Debtor, he was unable to account for certain discrepancies between the assessed values and the actual selling prices, except to note that the multiple listing sheets were not always accurate. *Id.* at 118-19.

Dennis J. Brady ("Brady"), a licensed real estate appraiser since 2001, testified as an expert witness on behalf of the Bank. He indicated that he had appraised approximately 300 residential properties in 2006 (Tr. at 135), of which only two were located in Onondaga County where the Residence is located (Tr. at 145). According to Brady, the market value of real property is usually higher than the assessed value. *Id.* at 137. He explained that the assessed value is one used for tax purposes. The market value represents how much the property is likely to sell for. *Id.* at 138.

Brady performed an appraisal of the Residence on November 3, 2006, which included an interior inspection of the property. *Id.* at 139, 142 and Bank's Exhibit A. He used the sales comparison method, relying on what he considered to be three comparable properties located from .64 to 4.38 miles from the Residence. Comparable #1 was located at 1311 Lamson Road in the Town of Lysander. The sale contract was dated November 17, 2005, and the closing occurred on February 14, 2006. *See* Debtor's Exhibit 6-A. The property sold for $58,194, and had only two or three bedrooms and one bath. Comparable #2 was located at 2262 Lamson Road in the Town of Lysander. The sale contract was dated February 23, 2006, and the closing occurred on September 22, 2006. *See* Debtor's Exhibit 6-B. The property sold for $77,900 with the seller paying concessions of $8,000. That property had three bedrooms and one bath. The

multiple listing sheet also indicated that it had recently been remodeled, including new flooring, new kitchen and a new roof. Comparable #3 was located at 449 Cole Road in the Town of Granby. The sale contract was dated November 9, 2005, and the closing occurred on January 9, 2006. *See* Debtor's Exhibit 14. The property sold for $79,300 and contained three or four bedrooms and one bath.

Brady originally estimated the fair market value of the Residence to be $70,000.[8] However, on further review he reduced that amount to $65,000 based on the roof being in fair condition, rather than average as originally thought. He also considered the fact that the wood siding on the exterior of the building needed scraping and painting. *Id.* at 144.

## DISCUSSION

### *Res judicata*

As an initial matter, the Debtor relies in part on the assertion that the confirmation of her Plan without objection by the Bank is *res judicata* on the issue of the treatment of its claim as unsecured, citing to this Court's decision in *In re Bryant*, Case No. 05-62017, Adv. Pro. 06-80013 (Bankr. N.D.N.Y. Dec. 12, 2006). In *Bryant,* American General Finance Services, Inc. ("American General"), which held a second mortgage on the debtor's residence, commenced an adversary proceeding requesting that its lien be declared valid despite a provision in the confirmed plan requiring it to execute a discharge of mortgage to be held in escrow by the chapter

---

[8] In its answer opposing the relief sought by the Debtor, the Bank initially asserted a value of $145,000 based on a valuation report dated August 22, 2006.

13 trustee pending successful completion of the plan. At oral argument, American General's attorney argued that it was actually the validity of the first mortgagee's lien that was being questioned and, therefore, *res judicata* did not apply because the plan had provided for payments to be made directly by the debtors to the first mortgagee without the necessity of addressing the validity of the first mortgagee's lien. *Id.* at 7, n.4.

The Court in *Bryant* was asked to address whether a debtor may "strip off" a lien as part of the confirmation process.[9] *Id.* at 13. In that case, the plan expressly provided that the lien of American General was to be avoided via the confirmation process. Correspondence from American General's original attorney indicated that he was well aware of that fact when he acknowledged that there was no equity to which his client's lien could attach based on an agreed valuation of $45,000. In holding that the debtors' plan was *res judicata* on the issue of lien avoidance, the Court stressed the importance of ensuring that due process is not denied to a creditor by providing the creditor with notice "'reasonably calculated to bring to the party's attention the nature and substance of the pending determination.'" *Id.* at 13-14, quoting *In re King*, 290 B.R. 641, 649 (Bankr. C.D.Ill. 2003) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

In the case presently under consideration, the Plan did not provide that upon confirmation the Bank's lien would be avoided. There was no provision requiring that the Bank execute a discharge of its mortgage to be held by the chapter 13 trustee in escrow. Instead, the only notice provided to the Bank was notice that the Debtor <u>intended to commence a separate adversary</u>

---

[9] "The term 'strip off' is colloquially used when there being no collateral value securing a mortgage, the entire lien is proposed to be avoided." *In re Mann*, 249 B.R. 831, 832, n.1 (B.A.P. 1st Cir. 2000).

9

proceeding to avoid its lien. Under those circumstances, the Court finds that *res judicata* is inapplicable.

**Valuation Date**

The parties have stipulated to the amounts of the claims of Household and the Bank at the commencement of the Debtor's case, namely $63,214.54 and $16,394.13, respectively. The dispute rests on the value of the Residence and the date on which that value should be determined. In *In re Stanton*, Case No. 03-66649, (Bankr. N.D.N.Y. March 18, 2005), the hearing on valuation occurred approximately a year after the commencement of the case. The debtor's appraiser had performed his appraisal two months after the filing of the petition. While the bank's appraiser had performed his appraisal approximately a year after the filing, all but one of his six comparables involved sales which had occurred within the six month period following the commencement of the case. Ultimately, the Court found it unnecessary "to make a specific finding regarding [the] exact value of the Subject Premises" (*Id.* at 13), and it was unnecessary for the Court to address the appropriate valuation date.

In the matter presently under consideration, it is the Bank's position that the Court need not address whether the date of filing or the date of the hearing is the relevant date because the Debtor has failed to meet her burden of proof by not presenting any expert testimony on the issue of the value of the Residence. The Bank contends that should the Court find it necessary to determine the appropriate valuation date, it should be that of the trial held on January 11, 2007.

Code § 506(a) provides that the "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest [in the estate's

interest in such property]." 11 U.S.C. § 506(a). The leading case in this Circuit to address the stripping off of a mortgage lien which is wholly unsecured is that of *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2d Cir. 2001). In *Pond* the court used the date of the hearing as the valuation date; however, the issue of the appropriate date was never raised by either party or discussed by the court.

The Bank argues that this Court should take a flexible approach in determining the appropriate valuation date, citing to *In re Wood*, 190 B.R. 788 (Bankr. M.D. Pa. 1996). In *Wood* the second mortgagee, however, did not dispute that its claim was totally unsecured. The court in *Wood* was asked to determine whether the appreciation of the debtor's property postpetition due to the debtor's efforts to have it reclassified from residential to "limited commercial" should inure to the benefit of the first mortgagee. *Id.* at 790-91. The court, in a very comprehensive analysis of the cases, acknowledged the existence of a number of diverse opinions on the subject, depending on the purpose for the valuation. *Id.* at 790-94 (collecting cases). The court concluded that given the language of Code § 506(a) that the date "should turn" on a number of factors, including, *inter alia*, any postpetition change in value due to the debtor's efforts, the expectancies of the parties at the time of the loan agreement, a resulting windfall to any one party, and whether the party benefitting from the delay in valuation was responsible for said delay. *Id.* at 794-95. Ultimately, the court concluded that the appropriate date for valuation of the real property was the date of filing the petition. *Id.* at 795.

The Court finds no basis to conclude that the valuation date for purposes of stripping off the Bank's lien should be anything but the petition date. *See In re Dean,* 319 B.R. 474, 479 (Bankr. E.D.Va. 2004); *In re Aubain*, 296 B.R. 624, 637 (Bankr. E.D.N.Y. 2003). As pointed out

by the court in *Dean,* "[r]eal property generally appreciates during the course of a bankruptcy case, and permitting a valuation date removed from the petition date would allow creditor's status to change from that of an unsecured creditor to a secured creditor through no affirmative action of debtors to put their property to more productive use, correct a defect, etc." *Dean*, 319 B.R. at 479.

**Valuation**

As previously noted by this Court,

It has long been recognized that valuation of assets is "not an exact science" and the courts have wide latitude in determining value. A court is not bound by values determined by appraisals but rather may form its own opinion as to the value of the subject property after consideration of the appraisers' testimony and their appraisals.

*Stanton* at 10, quoting *In re Richards*, Case No. 97-14798, 1999 WL 14680 at *7 (Bankr. E.D. Pa. Jan. 12, 1999).

In addressing the sufficiency of the evidence and whether the Debtor has met her burden of proof, it is necessary to examine two stages of the trial proceedings. At the completion of the Debtor's proof, the Bank's attorney made a motion pursuant to Rule 52(c) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), incorporated in Rule 7052 of the Federal Rules of Bankruptcy Procedure, for judgment on partial findings, based on his assertion that the Debtor had failed to meet her burden of proof. The Court reserved on the Bank's motion.

At the time that the Debtor concluded her direct case, she had submitted a copy of the 2006 tax assessment of the Residence, with a valuation date of July 2005, in the amount of $58,300. The Debtor also provided the Court with photographs she had taken of the Residence in February 2005 and in January 2007. The Debtor had no independent estimate of the value of

12

the Residence at the time she filed her Petition on April 1, 2005, relying instead on the value set forth in her schedules of $52,000, which she testified was based on an independent appraisal. She testified, however, that at the time of trial she believed the value of the Residence to be between $62,000 and $63,000, based on her personal familiarity with the property, as well as her independent review of the comparables used by the Bank's appraiser and her own experience as a licensed real estate agent and her experience working in the assessor's office of the Town of Lysander for twelve years. In addition, she elicited testimony from Long to the effect that between July 2005 and July 2006 there had been an overall increase in real estate prices and assessments of 5% for the Town of Lysander.

It is the Debtor's burden to demonstrate that there is not even one dollar of value in the Residence to support the lien which she is seeking to avoid. *In re Fisher,* 299 B.R. 544, 547 (Bankr. W.D.N.Y. 2003). "It is generally, if not universally, accepted that an owner of property may testify as to his or her opinion of such property's value without demonstrating any additional qualifications to give opinion evidence." *In re Brown*, 244 B.R. 603, 611 (Bankr. W.D. Va. 2000) (citations omitted); *see also In re Petrella*, 230 B.R. 829, 834, n.5 (Bankr. N.D. Ohio 1999) (indicating that "[a]n owner is competent to give his opinion as to the value of his property, often by stating the conclusion without stating a reason"). If credible, such testimony may be conclusive in the absence of any other evidence to the contrary. *Brown*, 244 B.R. at 611.

For purposes of the Bank's motion pursuant to Fed.R.Civ.P. 52(c) and in the absence of any evidence to the contrary, the Court concludes that the Debtor met her burden at the time she concluded her direct case. Based on her testimony, the value of the Residence was between $62,000 and $63,000 as of the date of the trial. By extrapolation and based on Long's testimony

that the value of residential real property in the rural area of the Town of Lysander increased approximately 5% between July 2005 and July 2006, the Court estimates that the value of the Residence was between $59,048 and $60,000 in April 2005. Accordingly, the Court finds that at that stage of the proceedings, the Debtor had met her burden of proof.

The Court must then consider whether the Bank has submitted sufficient evidence to overcome the valuation presented by the Debtor. In *Petrella* the mortgagee objected to confirmation of the debtors' plan, which sought to modify the creditor's second mortgage. The creditor introduced an appraisal through the testimony of a licensed realtor and appraiser indicating a fair market value of the debtors' residence of $104,000. *Petrella*, 230 B. R. at 834. The debtors contended that the fair market value was only $90,700. In support of their position, they submitted a copy of a real property tax invoice, which showed an assessed valuation of $63,500. *Id.* at 834, n.4. The debtors admitted to not being familiar with the valuation approach used by the county auditor's office. *Id.* The debtors did not introduce an appraisal to support their position and, instead, relied on their own personal opinions as supported by photographs they had taken showing areas of damage to their residence. *Id.* The court found the evidence of the mortgagee more credible based on the finding that

> [n]ot only were the Debtors unable to satisfactorily counter the formal appraisal offered by Greentree, their presentment of noncertified documents and the absence of proper witnesses to authenticate the documents, caused their tendered documentary evidence to be less persuasive. Additionally, the Debtors are not appraisers and have not undertaken a course of study in appraisal work . . . Sabine Petrella also stated that she is not familiar with what factors to look for in valuing a house.

*Id.*

Of course, in our case the Debtor is familiar with the factors that are to be considered in

14

valuing real property based on both her experience in the assessor's office and her work as a licensed real estate agent, as well as the courses she has taken in the past dealing with real estate appraisal. Thus, the Court is inclined to give more credibility to her testimony as a lay witness than the court did in *Petrella*.

As noted above, the valuation of assets is far from an exact science. Brady estimated the fair market value of the Residence to be $65,000 as of November 3, 2006. The Court has concerns about the upward adjustment of $2,000 to the price of the comparable sales in Brady's appraisal based on the fact that the Residence contains a wood stove, installed in the mud room, whereas the comparables did not. There is also the fact that according to the testimony of the Debtor, at the time she filed her petition, the furnace was not functioning properly and had to be replaced shortly after commencement of the case. Brady certainly had no way of knowing that when he conducted his appraisal in November 2006 and, arguably, that information was not relevant to his appraisal in 2006 when the furnace was operational. However, it certainly would have had an impact on the value of the Residence in April 2005.

These concerns of the Court, however, need not be addressed because of the fact that the $65,000 valuation by Brady as of November 3, 2006, also must be adjusted to reflect the value of the Residence in April 2005. Using the same extrapolation as applied to the Debtor's figures, the Court estimates the value to be $61,905 ($65,000 ÷ 1.05) as of April 1, 2005, the date the Debtor filed her Petition. Even if the adjustment was to be based on an increase in the values of residential real estate in the Town of Lysander of 3%, rather than 5% between July 2005 and July 2006, the value of the Residence calculates to be $63,106.80 ($65,000 ÷ 1.03) as of April 1, 2005. This is still insufficient to support the Bank's second mortgage based on Household's first

15

mortgage in the amount of $63,214.54.

Based on the foregoing, it is hereby

ORDERED that the Bank's motion pursuant to Fed.R.Civ.P. 52(c) is denied; and it is further

ORDERED that the relief sought in the Debtor's complaint to reclassify the Bank's claim as unsecured pursuant to Code § 506(a) and § 1322(b) is granted.

Dated at Utica, New York

this 3rd day of May 2007

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge